# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | |
|---|---|
| QUINCY DION LOYD | CIVIL ACTION NO. 06-0511 |
| VS. | SECTION P |
| BURL CAIN, WARDEN | JUDGE JAMES |
| | MAGISTRATE JUDGE HAYES |

## REPORT AND RECOMMENDATION

Before the court is Quincy Dion Loyd's *pro se* petition for writ of *habeas corpus* filed pursuant to 28 U.S.C. §2254 on or about March 27, 2006. Loyd is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is incarcerated at the Louisiana State Penitentiary, Angola, Louisiana where he is serving concurrent 45 and 25 year sentences imposed following his 2001 convictions for attempted armed robbery and aggravated burglary and his subsequent adjudication as a second felony offender in the Third Judicial District Court, Union Parish.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons, it is recommended that the petition be **DENIED** and **DISMISSED.**

## STATEMENT OF THE CASE

On February 28, 2001, petitioner was found guilty of attempted armed robbery and aggravated burglary. [doc. 1-1, p. 1] The facts of this case were articulated by the Second Circuit Court of Appeals as follows:

> Around midnight on the evening of September 8, 1999, members of the Steve Goldsby family were asleep in their home in Farmerville, Louisiana, when they were awakened by intruders. Steve Goldsby, his wife, Darlene, and his daughter, Athena, were asleep in one bedroom, and Darlene's brother, Willie Heard, was asleep in another bedroom. Darlene testified that she had heard the bedroom door being pushed open. The bedroom was dark, the only

1

light coming from the hallway through the opened door. She saw four people standing in the doorway but could not see their faces. One of the men fired several shots toward the bed. One shot struck Darlene in her face and another hit Athena in her side.
Steve rolled out of bed, pulling Darlene to the floor with him. Steve told Athena to get up, but she was unable to move. Steve did not recognize the male intruder who commanded, "Come on out! I know you're over there. Come on out, come out. I got this nine. I got this nine." The intruder warned the Goldsbys not to try anything funny. Darlene recognized the voice of the gunman as that of Deltra Henderson, whom she had known since childhood.
Steve put a clip in the .45 caliber pistol he kept under the bed and fired it out of his bedroom window to get Luther Heard's attention. Luther was Steve's other brother-in-law who lived in a mobile home behind the Goldsbys' home. The intruders left. As a result of the gunshots, Darlene's face is permanently disfigured and Athena is paralyzed from the waist down.

Defendant was subsequently arrested and charged with aggravated burglary and attempted armed robbery. Although the victims were unable to identify defendant as one of the perpetrators of the crimes, a jury found defendant guilty on both charges based upon his confession to Detective Trey Fulton, which the defense unsuccessfully sought to suppress, and corroborating and circumstantial evidence provided by the testimony of Robert Loyd, defendant's first cousin.

Robert Loyd testified that on the evening of September 8, 1999, he was with Deltra Henderson outside of the Eastside Apartments in Farmerville when a red Tempo arrived. Aaron Green, Germaine Middletown, and defendant were in the car. Deltra spoke with the occupants and returned to tell Robert that Aaron Green was talking about robbing Steve Goldsby. The red Tempo then left.

Later that evening at about 11:00 or 11:30, Robert and Deltra again encountered the three men in the Tempo in Farmerville; the trio parked their vehicle at a residence and joined Robert and Deltra in Deltra's car. Deltra drove and parked at his former residence located about two blocks from the Goldsby home. Aaron related that the group was going to rob Goldsby and asked Robert whether he was going with them. Defendant was armed with a shotgun, and Deltra and Aaron had nine millimeter pistols. Germaine was unarmed. At that time Robert decided not to participate. Germaine, Aaron, Deltra and defendant left the parked car and walked in the direction of the Goldsby home.

Robert waited by Deltra's car for a total of 20 or 30 minutes. He heard several gunshots, and about 10 minutes later, defendant, Aaron and Germaine returned to Deltra's car. Defendant and Aaron were still carrying their guns. Deltra did not return. Robert drove defendant, Aaron and Germaine in Deltra's car back to the Tempo. Robert drove Deltra's car to a girlfriend's apartment. Robert did not see Deltra again until early the next morning.

Robert Loyd's testimony corroborated statements made by defendant, who was arrested in Monroe on September 14, 1999, in connection with the instant crimes.

Defendant told Detective Trey Fulton of the Union Parish Sheriff's Office that on the night of the crimes, he, Germaine and Aaron traveled from Monroe to Farmerville in a red car to meet Deltra and Robert. They planned to go to Steve Goldsby's home to rob Goldsby of money. After joining Robert and Deltra, they rode to Deltra's old house, parked the car, and defendant, Deltra, Aaron and Germaine began to walk toward the Goldsby home to commit the robbery. Robert decided to stay by the car.

Defendant said he climbed into the Goldsby home through a window in Willie Heard's bedroom and then opened the front door for the rest of the men. While Deltra and Germaine went back to Steve Goldsby's bedroom, defendant stayed midway down the hall, holding a shotgun, and Aaron stood at the front door. After hearing a barrage of gunfire, defendant left the house without firing the shotgun he carried. Defendant, Aaron and Germaine returned to the car, but Deltra did not. Then Robert drove defendant, Aaron and Germaine back to the red car, and they went back to Monroe. Defendant discarded the shotgun in a trash dumpster in Monroe. The shotgun was never recovered. At trial, Detective Fulton made an in-court identification of defendant as the person who gave the statement on September 15.

A jury of 12 convicted defendant as charged. His oral motion for post-verdict judgment of acquittal was denied by the trial court. Defendant waived sentencing delays. The court sentenced defendant to imprisonment at hard labor for 45 years without benefit of probation, parole or suspension of sentence for attempted armed robbery and 25 years imprisonment at hard labor for the aggravated burglary conviction, to run concurrently with the sentence imposed for attempted armed robbery. Defendant made an oral motion to reconsider sentence, which was denied.

Thereafter, the state filed a multiple offender bill, charging defendant as a second felony offender under La.R.S. 15:529.1.

> Defendant pled guilty to being a second felony offender, and the court sentenced him to the same sentence, without vacating the previously imposed sentence. *State of Louisiana v. Quincy Loyd*, 35,637 (La. App. 2 Cir. 2/27/2002), 810 So.2d 1214, 1217-18.

Petitioner appealed his conviction and sentence and argued five Assignments of Error:

> (1) Insufficient evidence to support the verdict of attempted armed robbery.
> (2) Trial error – denial of the Motion to Suppress confession.
> (3) Trial error – denial of petitioner's challenge for cause of venireman Jerry Smith.
> (4) Excessiveness of sentence.
> (5) Trial error – denial of the motion to reconsider sentence. [doc. 1, Volume 1, Exhibit D-1, "Original Brief on Behalf of Appellant," at p. 3]

On February 27, 2002, the Second Circuit Court of Appeals affirmed petitioner's conviction and sentence. See *State of Louisiana v. Quincy Loyd*, 35,637 (La. App. 2d Cir. 2/27/2002), 810 So.2d 1214. Notice of judgment was mailed to petitioner and his court-appointed appellate counsel on that same date. [See also Slip Opinion, Doc. 1, Volume 1, Exhibit D-2]

Sometime prior to April 10, 2002, petitioner corresponded with his trial attorney. On April 10, 2002, the attorney advised petitioner,

> I have been notified by your Appellate Counsel that the conviction is now final. Please be advised that I have not been appointed to assist you on any post-conviction relief application you may be preparing.
>
> Any request you have for minutes should be directed to the Union Parish Clerk of Court. I am not certain what fees, if any will be required. As to your request for transcriptions, please direct your inquiries to the appropriate Court Reporter.
>
> I regret that I am unable to forward your file to Angola. [doc. 1, Vol. 1, Exhibit C]

Thereafter, on April 15, 2002, petitioner's trial attorney sent "... a copy of all the

transcripts from the pre-trial motions and preliminary examinations that I had in the office. I have no additional transcripts." Counsel further advised petitioner,

> As I have advised you before, it is my understanding that your conviction is final. Please note that I have not been appointed to assist you on any post-conviction relief application you may be preparing.
>
> Any additional request for transcripts should either be directed to the attorney that handled your appeal or to the appropriate Court Reporter. [*id.*]

On April 23, 2002, petitioner received a letter from the Louisiana State Bar Association which stated that petitioner's trial attorney "...has indicated that he has returned the entire file as of April 22, 2002." [*id.*]

On some unspecified date[1] petitioner filed a *pro se* application for writ of *certiorari* with the Louisiana Supreme Court. [doc. 1, Vol. 1, undated Writ Application, Exhibit D-3]

On April 21, 2003, the writ application was denied. *State of Louisiana v. Quincy Loyd*,

---

[1] It is impossible to determine from the record submitted whether or not petitioner timely filed his petition for *certiorari* in Louisiana's Supreme Court. (Louisiana Supreme Court Rule X §5(a) mandates that such writ applications be filed within 30 days of the mailing of notice of judgment by the Court of Appeals.) Petitioner's writ application was timely only if he filed it prior to March 27, 2002. The correspondence submitted by petitioner suggests that he did not file his writ application until he received the information requested from his trial attorney, and this did not occur until sometime in April, 2002. If his application was filed after March 27, 2002, then under the provisions of the 28 U.S.C. §2244(d), his judgment of conviction and sentence would have become final by the conclusion of direct review on March 27, 2002, and not April 21, 2003, the date the Louisiana Supreme Court ultimately denied his writ application. See *Roberts v. Cockrell*, 319 F.3d 690, 694-695 (5th Cir. 2003); see also *McGee v. Cain*, 2004 WL 1683100 (5th Cir. 7/28/2004), 104 Fed. Appx. 989 (unpublished) (*Habeas* petitioner's conviction became final for the AEDPA's limitations purposes on the date that the time expired for seeking a supervisory writ in the Louisiana Supreme Court, not the date that the Louisiana Supreme Court denied the petitioner's untimely writ application.) Thus, if petitioner's judgment of conviction became final for AEDPA purposes on March 27, 2002, he had one year from that date to file his federal *habeas* petition, or, until the corresponding date in 2003. Petitioner obviously did not file his federal petition before that date; nor does it appear that he filed a post-conviction or other collateral attack in the Louisiana courts so as to toll the limitations period prior to its expiration. [See § 2244(d)(2), "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."; see also *McGee v. Cain*, supra at *2 "...the AEDPA limitations period would be tolled only while [petitioner] sought and obtained leave to file the out-of-time writ request."] Of course, as stated above, it is impossible to determine at this time whether or not petitioner's federal *habeas* is timely; nevertheless, since his claims are manifestly without merit, the undersigned has determined that dismissal on the merits provides a more expedient resolution of this case. Should petitioner chose to file an objection to this Report and Recommendation, he should also provide evidence to establish the date he filed his writ application in the Supreme Court.

2002-1159 (La. 4/21/2003), 841 So.2d 779. [see also doc. 1, Vol. 1, Judgment, at D-3]

On March 29, 2004, petitioner filed an Application for Post Conviction Relief in the district court. [doc. 3-2, p. 4; doc. 1, Vol. 1, Original Post-Conviction and Exhibits, at E-1] Petitioner raised the following claims for relief:

> Claim One – The evidence was insufficient to support the verdict of guilt beyond a reasonable doubt in violation of Petitioner's right to Due Process of Law ... and the Court of Appeal erroneously applied the standard of review to sufficiency of evidence claim on appeal ... also appellate counsel was ineffective when he erroneously raised the insufficient evidence claim under the wrong procedure. [*id.*, p. 5]
>
> Claim Two – Petitioner ... was convicted and sentenced in violation of ... the United States Constitution, when his court appointed attorney failed to render reasonable effective assistance of counsel at all stages of the proceedings...
>
> (a) Petitioner's right to reasonable effective assistance of counsel was violated by counsel's decision not to seek a defense of misidentification. [*id.*, p. 9]
>
> (b) Trial counsel was ineffective when he failed to call Mr. Larry Manning as [a witness] to properly challenge who ... initiated the second interrogation and failure to call and impeach Officer J.D. Simpson as a witness. Also for not transferring evidence from initial charges. [*id.*, p. 11]
>
> Claim Three – The State knowingly used false and perjured testimony, which when left uncorrected, established prosecutorial misconduct. [*id.*, p. 18]

On April 26, 2004 petitioner filed a "Motion to Supplement the Original Application for Post-Conviction Relief, Writ of Habeas Corpus." [doc. 1, Vol. 1, Exhibits, Exhibit E-2] On some unspecified date thereafter he apparently filed a "Supplement to Amended Petition for Post-Conviction Relief" raising a single claim:

> "The evidence was insufficient to support the verdict of guilt beyond a reasonable doubt ... and the court of appeals erroneously applied the standard of review to sufficiency of evidence claim on appeal ... Also appellate counsel was ineffective when he

erroneously raised the insufficient evidence claim under the wrong procedure." [*id.*, p. 1]

On August 30, 2004 petitioner filed a "Motion to File *Pro Se* Supplement Brief of Original Post-Conviction." [*id.*] Therein he argued, "Petitioner was denied due process of law ... when the prosecutor in the opening statement alluded facts which he failed to prove during trial; also petitioner was denied effective assistance of counsel..." [*id.*, p. 1] and, "Petitioner was denied due process of law ... when appellate counsel failed to file a claim for relief; also petitioner was denied effective assistance of counsel..." [*id.*, p. 3]

On March 23, 2005, the district judge denied the application for post-conviction relief. [doc. 1, Vol. 2, Exhibit E-3]

On some unspecified date petitioner filed an Application for Supervisory Writs of Review in the Second Circuit Court of Appeals.[2] [doc. 1, Vol.2, Exhibit E-4] The writ application was assigned Docket Number KH 05-40123. On May 5, 2005, the Second Circuit denied writs stating,

> The claims raised are meritless, and the trial court did not err in denying relief. The applicant confessed to the commission of the crime of conviction, the state proved the facts necessary to convict, and there is no showing of ineffective assistance of counsel, either at trial or on appeal. There is no showing of the use of perjured testimony. The trial court correctly denied relief without an evidentiary hearing. *State of Louisiana v. Quincy Loyd*, No. 40123-KH (La. App. 2 Cir. 5/5/2005). [See doc. 1, Vol. 2, Exhibit E-4]

On May 17, 2005, petitioner submitted his application for writs to the Louisiana Supreme Court.[3] [doc. 1, Vol. 1, Exhibit B "Mail Receipt" Louisiana State Penitentiary; see also Vol. 2,

---

[2]The Application for Post-Conviction Relief was attached to petitioner's writ application "as argument and law." [doc. 1, Vol.2, Exhibit E-4, at p. 5]

[3] The Application for Post-Conviction Relief was also attached to petitioner's writ application "as argument and law." [doc. 1, Vol.2, Exhibit E-6, at p. 5]

7

Exhibit E-5, Application for Writs]

On March 17, 2006, his writ application was denied. [*State ex rel. Quincy Loyd v. State of Louisiana*, 2005-1723, ___ So.2d ___, 2006 WL 1050006 (La. 3/17/2006); doc. 1, Vol. 2, Exhibit E-5 (Slip Opinion)].

Petitioner signed his federal writ application on March 21, 2006; it was received and filed on March 27, 2006. Petitioner argues the following claims:

> Ground One – Ineffective Assistance of Counsel – Counsel rendered ineffective assistance when he failed to file a Motion to Suppress Identification.
>
> Ground Two – Ineffective Assistance of Counsel – Trial Counsel was ineffective when he failed to call Larry Manning as a witness to properly challenge who exactly initiated the second interrogation and failure to call and impeach Officer J.D. Simpson as a witness. [doc. 1-1, paragraph 5(a) and (b); doc. 3-2, p. 7 and p. 9]

## LAW AND ANALYSIS

A *habeas* petitioner whose claims were adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d). The two claims raised in this *habeas* petition were raised in petitioner's Application for Post-Conviction Relief in the Third Judicial District Court and thereafter in the Second Circuit Court of Appeals and the Louisiana Supreme Court.

Both claims were adjudicated on the merits. The district court adopted the State's answer to the application for post-conviction relief as its reasons for judgment. [Vol. 2, Exhibit E-3] The State argued that the petitioner's ineffective assistance of counsel claims should be

> ...analyzed under the two pronged test developed by the United States Supreme Court. To be successful, the defendant must first show that the attorney's performance was deficient. This requires showing that counsel made errors so serious that the defendant was effectively denied the right to counsel as guaranteed by the Sixth Amendment. Secondly, the defendant must prove that counsel's

8

deficient performance actually prejudiced the defense, meaning that the errors were so serious that the defendant was deprived of a fair trial. It is not enough for the defendant to show that his counsel's errors or omissions had some conceivable effect on the outcome of the proceeding. Rather, he must show that, but for counsel's errors, a reasonable probability exists that the outcome of the trial would have been different. [*id*., p. 1]

With regard to the allegation that counsel was ineffective because he failed to file a motion to suppress identification, the State noted that petitioner could not make the required showing of prejudice because of

> ... his own confession in which he details how he and the other defendants planned to break into [the victim's] residence and rob him ... [and] how he confessed to entering the [victim's] residence while armed with a shotgun and unlocking the front door so the other defendants could enter the home. [*id*., p. 2]

With regard to the allegation concerning counsel's failure to subpoena petitioner's uncle, Larry Manning, to testify at the Motion to Suppress confession, the state noted,

> Mr. Larry Manning was not called as a defense witness because he would have testified that [petitioner] called him and asked him to contact [Detective] Trey Fulton and have Fulton come see [the petitioner]. Larry Manning would have corroborated Trey Fulton's testimony regarding Fulton's contact with Quincy Loyd. [*id*.]

The Second Circuit Court of Appeals also addressed the merits of petitioner's claims and determined,

> The claims raised are meritless, ... The applicant confessed to the commission of the crime of conviction, the state proved the facts necessary to convict, and there is no showing of ineffective assistance of counsel ... *State of Louisiana v. Quincy Loyd*, 40123-KH (La. 5/5/2005), Vol. 2, Exhibit E-4]

Thus, under § 2254(d), petitioner is not entitled to relief unless he can demonstrate that the state courts' adjudication of his claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

9

Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

The phrase "clearly established" refers to the <u>holdings</u>, as opposed to the *dicta*, of the United States Supreme Court as of the time of the state-court decision being scrutinized. *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Thus, "clearly established Federal law" refers to the governing legal principle or principles set forth by holdings of the United States Supreme Court at the time of the state court's decision. See *id.*, at 405, 413, 120 S.Ct. 1495; *Bell v. Cone*, 535 U.S. 685, 698, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002).

A state court's decision is "...contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor, supra*, at 405-406, 120 S.Ct. 1495; see also *Bell v. Cone, supra*, at 694, 122 S.Ct. 1843.

Additionally, with regard to the phrase "unreasonable application," federal *habeas* courts may grant the writ only if the state court identifies the correct governing legal principle but then <u>unreasonably</u> applies that principle to the facts of the prisoner's case. *Id.*, at 413, 120 S.Ct. 1495. In other words, before relief may be granted, the *habeas* court must first conclude that the state court's application of federal law was more than merely incorrect or erroneous. *Id.*, at 410, 412, 120 S.Ct. 1495. The state court's application of clearly established law must have been <u>objectively unreasonable</u>. *Id.*, at 409, 120 S.Ct. 1495. ("Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal *habeas* court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly

established federal law erroneously or incorrectly." *Williams v. Taylor*, 529 U.S., at 411, 120 S.Ct. 1495. Instead, the application must be <u>objectively unreasonable</u>. *Id.*, at 409, 120 S.Ct. 1495; *Bell v. Cone, supra*, at 699, 122 S.Ct. 1843; *Woodford v. Visciotti*, 537 U.S. 19, 27, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (*per curiam*).)

It is clear that the state courts relied upon the appropriate jurisprudential rule; the "two-pronged test" referred to in the State's answer is the test for ineffective assistance of counsel articulated over twenty years ago by the United States Supreme Court in the matter of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This "two-pronged test" as set forth in *Strickland* is clearly established federal law. See *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003); *Woodford v. Visciotti*, 537 U.S. 19, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002); *Pippin v. Dretke*, 434 F.3d 782 (5th Cir. 2005). Petitioner has not, nor can he, show that the state courts unreasonably applied *Strickland* when they determined that in light of petitioner's confession, he would be unable to establish that any prejudice resulted from counsel's failure to file a motion to suppress identification.

Further, regardless of the State courts' findings and conclusions, it is clear from an examination of the record that petitioner's out-of-court identification claim is manifestly frivolous. The record reflects that petitioner was identified, not by an eye witness who had a fleeting opportunity to observe petitioner, but rather by his own first cousin who testified that he and petitioner have known one another all throughout their lives. [doc. 1, Vol. 3, trial transcript, p. 37/135]

With regard to the second claim, petitioner argues that his court-appointed attorney rendered ineffective assistance when he failed to subpoena petitioner's uncle Larry Manning and a police officer, Officer Simpson to testify at the motion to suppress. According to petitioner, had these witnesses been called to testify, "...then there is a reasonable probability that the

11

outcome of the Motion to Suppress would have been different..." Petitioner claims that Manning would have testified that he did not call the police to set up the second interview between petitioner and Detective Fulton. He contends that he had invoked his right to counsel on the previous day when Fulton attempted to interview him and that consequently, if he could have established that Manning did not contact Fulton to set up the second interview, then the confession given at the second interview would have been suppressed under the rule articulated in *Edwards v. Arizona*, 451 U.S. 477, 484, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). *Edwards*, of course, provides the bright-line rule for applying the Fifth Amendment to such claims: when an accused expresses his desire to speak to police only through counsel, he is not subject to further interrogation until counsel is made available to him, unless the accused initiates further communications with the police.

This claim is also frivolous and refuted by the record. Detective Fulton testified and was subject to cross-examination at a Motion to Suppress convened on February 26, 2001. [Vol. 2, Exhibit F, Transcript] At the conclusion of the hearing, the trial court made the following observations,

> In connection with the matter, of course, this is a Motion to Suppress oral statements given by the defendant to Deputy Fulton. In connection with a Motion to Suppress the State bears the burden of proving number one that any statement was freely and voluntarily given and secondly that the statement was given after the defendant had been advised of his constitutional and other rights and waiver of those rights. <u>The testimony that was presented in this case indicated that on a particular date, I think it was the 14th day of the month that Deputy Fulton visited with the defendant while he was incarcerated. The defendant had said that he wanted, that – that after being advised of his Miranda rights the defendant indicated that he wanted to give some consideration to either speaking to a family member or an attorney. At that time he did not specifically invoke his right to be represented by counsel at that time. Apparently, based on the testimony of Mr. Fulton it was simply that he wanted to give further consideration to that right before making a statement. The Court does not consider that that</u>
12

> was the invocation of his right to speak to counsel. Deputy Fulton did not further question him at that time, although the defendant wanted him to stay there with hin, I think as I recall the testimony. The next day Deputy Fulton received a call from a Larry Manning who identified himself as a family member and said that he had spoken to the defendant that the defendant indicated that he wanted to further speak to Deputy Fulton. At that point arrangements were made and the defendant was then brought to the presence of Deputy Fulton. At that point in time Deputy Fulton informed the defendant that he had spoken to Mr. Manning and understood that he wanted to speak to him, and the defendant did not indicate one way or the other that he ... did not state that he had had Mr. Manning call him, but indicated his knowledge of the fact that he had spoken to Larry Manning and the impression was left with Fulton that the defendant had in fact spoken to him and he did want to speak to Fulton. The defendant at that point was advised of his Constitutional and other rights, including his right to counsel. And indicated that he understood those rights. Deputy Fulton was of the impression that the defendant also indicated his knowledge of understanding of and waiver of his constitutional and other rights. There was no indication of any nature or kind that the statement of the defendant was not freely and voluntarily given. To the contrary, the testimony of Fulton was that it was – that the test – that his statement was freely and voluntarily given... [*id.*, pp. 15/42-17/44]

In other words, even had Manning testified that he did not call Detective Fulton to set up the second interview, such testimony would have been of no importance since the court determined that petitioner had not invoked his right to counsel during the first interview.

Additionally, petitioner claims that counsel was ineffective for failing to subpoena Officer Simpson to testify either at the Motion to Suppress or the Trial on the Merits. This claim is incomprehensible. Officer Simpson testified at the preliminary hearing. [Vol. 2, Exhibit F, Preliminary Hearing Transcript] Nothing in that testimony suggests that his testimony at either the motion to suppress or trial on the merits would have been of benefit to the petitioner.

The undersigned, having examined the entire record submitted by the petitioner in support of his claims, including the complete trial transcript, the transcript of the preliminary

13

hearing and motion suppress, has thus concluded that (a) petitioner's claims were adjudicated on the merits in the Louisiana courts; (b) the adjudications did not result in decisions which were contrary to or involved unreasonable applications of clearly established Federal law; and (c) the adjudications did not result in decisions that were based on unreasonable determinations of the facts.

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts provides for prompt review and examination of *habeas* petitions by the court and further states, "If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified." Citing *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970), the Advisory Committee Notes following Rule 4 state, "...under § 2243 it is the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." As shown above, dismissal of this habeas petition under Rule 4 is appropriate. Petitioner's claims are manifestly frivolous in light of the overwhelming evidence of his guilt.

Accordingly,

**IT IS RECOMMENDED** that this petition for *habeas corpus* should be **DENIED AND DISMISSED WITH PREJUDICE** pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts since it plainly appears from the face of the petition and exhibits annexed to it that the petitioner is not entitled to relief.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court.[4] A party may

---

[4] In the event that petitioner objects to this Report and Recommendation, he should also address the time bar issue raised in footnote 1 above. Petitioner should provide documentary evidence to establish the date he filed his

14

respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the District judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

**THUS DONE AND SIGNED** in Chambers at Monroe, Louisiana, this 9th day of May, 2006.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE

---

application for writ of *certiorari* in the litigation entitled *State of Louisiana v. Quincy Loyd*, 2002-1159 (La. 4/21/2003), 841 So.2d 779.